# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**GEORGE A. PRESTON**                                    **CIVIL ACTION**

**VERSUS**                                                           **NO. 13-253**

**N. BURL CAIN, WARDEN**                           **SECTION "A"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, George Preston, is a convicted inmate currently incarcerated in the

Avoyelles Correctional Center in Cottonport, Louisiana.[2]  Preston was charged by bill

of information in Jefferson Parish on December 13, 2006, with one count of armed

robbery and one count of simple burglary.[3]  The Louisiana Fifth Circuit Court of Appeal

summarized the facts of the case as follows:

> On September 14, 2006, Dennis Moreau, the general manager of the
> McDonald's Restaurant located at 2126 Airline Dr. in Kenner, Louisiana, made
> a 911 call to the Kenner police reporting that he was robbed of the restaurant's
> bank deposit at gunpoint. . . . Moreau said that the perpetrator pulled a gun on
> him, took the deposit (which was in a McDonald's bag), and ran down the street
> after the robbery. Stating that he was unfamiliar with guns, he described the
> weapon as a chrome-colored gun, "kind of small," "like maybe a 9mm." He said
> that before the robbery, he saw the perpetrator in the restaurant speaking to one
> of Mr. Moreau's employees. And, he would recognize the perpetrator if he saw
> him again. He gave a description to the operator. Mr. Moreau testified at trial that
> he was "really frantic" at the time and the description he gave then might not be
> "perfect." He testified that he could not vouch for the accuracy of the police
> report's statement of the description he gave to the police. However, he was one
> hundred percent certain of his testimony in court regarding his identification of
> the defendant as the robber.
>      Detective Brian McGregor, a 14-year veteran of the Kenner Police
> Department, testified that he . . . responded within 10 to 15 minutes to the
> dispatched radio call. . . . [of] an armed robbery involving a gun at the restaurant.
> Several officers were at the scene when he arrived. Detective McGregor spoke
> with Mr. Moreau. Detective McGregor related Mr. Moreau's account of the
> incident, which was similar to Mr. Moreau's description at trial.
>      Mr. Moreau testified that on the day of the robbery, he worked a 7:00 AM
> to 4:00 PM shift. Around 1:00 PM, he noticed the defendant speaking to two
> employees. Mr. Moreau returned to his office and then walked around the

---

[2]State Rec. Vol. 2 of 5.

[3]State Rec. Vol. 1 of 5, Bill of Information.

restaurant to make certain there was no problem. He spotted the defendant walking with an employee to the bathroom. He thought they were "goofing off" so he followed them. His employee returned to work as instructed and the defendant sat at a table. A few minutes later, a disturbance occurred. The defendant was talking loudly to the employees and yelling. Around 2:30 PM or 2:45 PM, Mr. Moreau told the defendant to order food or leave the restaurant. The defendant made "smart comments" under his breath and walked out of the restaurant.

Mr. Moreau went to his office. Among other things, he counted money and prepared bank deposits. Shortly before 4:00 PM, about 3:45 PM, Mr. Moreau walked out the service and employee door—the back door—to his car that was parked in the back parking lot. That door could only be opened from the inside. Mr. Moreau recalled the events that followed "perfectly." He stated that he unlocked his car door, sat inside, and closed the door. He delayed starting the car while retrieving change from his pocket. A few seconds later, the defendant opened the car door. Mr. Moreau recalled that he had asked the defendant to leave the restaurant. Hence, when the defendant first opened the door, Mr. Moreau thought it was a "joke." Mr. Moreau focused on the defendant's face and did not see a gun at first. He was puzzled by the defendant's actions. He thought the defendant was angry at Mr. Moreau for "kicking him out of the restaurant." The defendant yelled at Mr. Moreau and then Mr. Moreau saw the gun. At the time he saw the gun, the defendant told Mr. Moreau to give him the money. Mr. Moreau felt "paralyzed" at being held up at gunpoint. He gave the defendant the money that was in a McDonald's bag and the defendant ran down the street with the bag. Mr. Moreau ran into the restaurant and called the police. The amount of money that was taken totaled $3700 to $4000 for two deposits.

At trial, Mr. Morrow described the gun as a small kind of silver handgun. When the prosecutor asked if there was any possible mistake that the thing that was in the defendant's hand was a gun, he replied "absolutely not."

Mr. Moreau testified that he knew the person who had robbed him because he had seen the perpetrator earlier in the restaurant that day and the perpetrator did not wear a mask. He had absolutely no doubt that the defendant was the person who robbed him. Mr. Moreau testified that the defendant had a tattoo on his "eye" that was very easily seen.

Mr. Moreau stated: "I will never forget his face and I knew at that instant that he put that gun in my face, when he opened the car door I knew exactly who he was the second it happened and there is no question in my mind, it is one hundred percent." He identified the defendant in court as the person who robbed him that day. Mr. Moreau testified that he did not see anyone other than the defendant in the parking lot at the time he was robbed, nor was there anyone running with the defendant when he fled the scene after the robbery.

3

Sergeant Marc Ortiz, a 16-year veteran with the Kenner Police Department, arrived at the scene shortly after the robbery. Sergeant Ortiz, an expert in the field of computer forensic and data recovery, testified that in September 2006, he was the department's computer forensics examiner. He retrieved digital video surveillance footage from the restaurant's surveillance equipment. Mr. Moreau indicated the pertinent time frame. There was no video surveillance of the robbery outside the restaurant. Sergeant Ortiz copied scenes of an individual who was inside the business prior to the robbery. The state introduced those digital video scenes. That digital video was displayed to the jury.

Sergeant Ortiz pointed out Mr. Moreau, an employee, and the perpetrator– later identified as the defendant. Sergeant Ortiz explained that Mr. Moreau identified those parties. Still shots of the defendant were also taken from this video and introduced into evidence.

Detective McGregor testified that he later developed a suspect. On October 12, 2006, he compiled a six-person photographic lineup including the suspect and other individuals with similar characteristics. Detective McGregor stated that he did not present the lineup to Mr. Moreau in a suggestive manner. He noted that a computer technique removed the tattoo on the defendant's face so that all photographs had no tattoo. Detective McGregor and Mr. Moreau testified that Mr. Moreau identified the defendant. . . .

Detective McGregor stated that Orleans Parish police arrested the defendant as a fugitive at the Greyhound bus station in New Orleans as he attempted to flee to Atlanta, Georgia. At the time of his arrest the police seized two bandannas and the newspaper article that were in the defendant's possession. . . . .

Detective McGregor testified that after being advised of his rights and waiving them, the defendant admitted that he was the individual depicted in the surveillance photographs. He also admitted that he was asked to leave the restaurant after being involved in a verbal altercation with the manager. However, the defendant denied robbing the manager and having a gun in his possession. The defendant acknowledged that he learned he was wanted for the armed robbery and he was attempting to leave the area.

According to Detective McGregor, the defendant maintained that he was alone when he entered and left the restaurant. However, the defendant testified at trial that he was with a friend at the time.

The defendant testified that he was 19 years of age at the time of trial– August 2008. The defendant admitted that he was at the restaurant on the date of the robbery. Elaine Webb, a McDonald's employee, also testified that she saw the defendant inside the restaurant that afternoon.

The defendant testified that he lived nearby and often went there. He stated that the video showed him embracing one of the employees. On the date of the

4

incident, he was at the restaurant with a friend. He waited for his friend to order food. He also went to the restroom. After he returned, he sat at a table while his friend got the order. Although he stated that he was not talking to anyone, the manager, however, said that the defendant was creating a disturbance. The manager told him that if he did not order anything, he needed to leave. According to the defendant, he responded by telling the manager that he was not ordering anything but he was with someone who was ordering something. The manager reiterated that if he did not order anything he had to leave. The manager told the defendant that if he did not leave the business, the manager would call the police. The defendant said that after waiting a few seconds for his friend to return, he and his friend went home.

The defendant stated that he heard in the neighborhood about the crime. He returned to the restaurant twice after the robbery. He did so because he had nothing to do with the robbery. He denied ever possessing a firearm. He denied ever putting a firearm in someone's face and demanding money.

The defendant explained that at his arrest, which was a month after the crime, he was attempting to go to his mother's home in Atlanta. He was afraid because he was wanted for a crime that he did not commit. His mother told him to come to Atlanta. He had the newspaper clipping in his pocket because it referred to him as the robber. He also had bandannas on his person. However, he did not have money or a weapon in his possession.

He stated that he told the officers he did not commit the robbery and he was not going to take an armed robbery charge because he did not commit the crime.

Detective McGregor testified that the restaurant's bags, money, and deposit slips were never recovered.

State v. Preston, 40 So.3d 1052, 1055-57 (La. App. 5th Cir. 2010) (footnotes omitted);

State Record Volume 1 of 5, Louisiana Fifth Circuit Court of Appeal Opinion, 2009-KA-856, May 25, 2010.

Trial commenced on August 12, 2008, and on August 14, 2008, the jury found

Preston guilty of armed robbery.[4]  The verdict was adopted as the judgment of the court.[5]

---

[4]State Rec. Vol. 3 of 5, pp.1 - Vol. 4, pp. 406, 424.

[5]Id., p. 15, Minutes record verdict as: "GUILTY to a lesser charge, Armed Robbery . . . ."

Preston's counsel noted an objection to the verdict being adopted on the grounds that it was a compromise verdict.[6] On September 17, 2008, the trial court sentenced Preston to 20 years in prison at hard labor without the benefit of parole, probation or suspension of sentence, to run consecutively to any other sentences he may be serving.[7] At the sentencing hearing, Preston's counsel orally moved for a new trial on the basis of erroneous jury instructions.[8] The trial court set a hearing on this motion for November 6, 2008,[9] but it was continued until December 4, 2008, at which time the court declared the motion moot because defense counsel had not filed a written motion.[10]

After various untimely and/or unsuccessful motions for transcripts and appeal, on June 22, 2009, Preston filed an application for post-conviction relief requesting an out-of-time appeal.[11] On July 6, 2009, the trial court granted an out-of-time appeal and appointed appellate counsel, but otherwise dismissed Preston's application without prejudice.[12]

---

[6] Id., p. 410.

[7] Id., p. 418.

[8] Id., p. 419-20.

[9] Id., p. 420.

[10] Id., p. 18.

[11] Id., pp. 118-129.

[12] Id., p 130.

On direct appeal, Preston's appointed counsel argued that erroneous jury instructions and listing of responsive verdicts provided to the jury deprived Preston of his right to due process; that trial counsel provided ineffective assistance by failing to object to the instructions and responsive verdict listings; and that the evidence was insufficient to support the verdict.[13]  Preston also filed two pro se supplement briefs.[14] On May 25, 2010, the Louisiana Fifth Circuit affirmed the conviction, reasoning that Preston was not prejudiced by the jury instructions, responsive verdicts list or trial counsel's failure to object to them, and that the evidence supported the jury's findings of guilt.[15]

On June 25, 2010, Preston filed a writ application in the Louisiana Supreme Court requesting review of the Louisiana Fifth Circuit decision affirming his conviction.[16] The Louisiana Supreme Court denied Preston's application on January 14, 2011, without opinion.[17]

_____

[13]State Rec. Vol. 3 of 5, "Original Brief on Behalf of Appellant" (file-stamped 11/17/09).

[14]Id., Application for Supplement Brief by the Defendant-Appellant (dated 2/19/10) and Vol. 2 of 5, Application for Supplement Brief by the Defendant-Appellant (dated 02/23/10).

[15]State v. Preston, 40 So.3d 1052 (La. App. 5th Cir. 2010); State Rec. Vol. 2 of 5, Louisiana 5th Circuit Court of Appeal Opinion, Case No. 2009-KA-0856.

[16]State Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 2010-K-1492 (dated 1/14/2011).

[17]Id., Supreme Court Opinion, 2010-K-1492 (dated 1/14/2011).

On May 27, 2011, Preston submitted an application for post-conviction relief asserting the following claims: (1) Appellate counsel was ineffective because he failed to address both prongs of the standard to show ineffective assistance of trial counsel established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). (2) The erroneous jury instructions denied Preston his right to a fair trial. (3) The conviction was unconstitutional because it was "based on a non-responsive verdict under [La. Code Crim. P.] Art. 814." (4) Trial counsel was ineffective because he (a) did not timely object to the erroneous jury instructions, and (b) failed to submit a written motion following his oral motion for a new trial based on the erroneous jury instructions.[18] On June 12, 2011, the trial court denied the application, stating:

> These claims are barred from review o[n] post-conviction relief under LSA-C.Cr.P. Art. 930.4 (C), which states that unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgement of conviction and sentence shall not be considered. These claims (and/or issues in these claims) were previously argued assignments of error in petitioner's direct appeal. The merits of the claims shall not be reviewed by this court.[19]

On September 7, 2011, Preston applied for a supervisory writ in the Louisiana Fifth Circuit concerning the trial court's denial of his post-conviction relief application.[20]

---

[18]State Rec. Vol. 2 of 5, Uniform Application for Post-Conviction Relief (dated 5/27/2011).

[19]<u>Id.</u>, Trial Court Order (dated 6/15/2011).

[20]State Rec. Vol. 5 of 5, Application for Supervisory Writ (dated 9/7/2011).

On September 21, 2011, the Louisiana Fifth Circuit denied his writ application, finding the claims without merit.[21]  His subsequent application for rehearing  was denied on November 2, 2011.[22]

Preston's writ application in the Louisiana Supreme Court was denied on June 1, 2012, without opinion.[23]

II.    FEDERAL HABEAS PETITION

On February 13, 2013, the clerk of this court filed Preston's petition for federal habeas corpus relief in which he asserts two grounds for relief:  (1) His trial counsel was ineffective in failing to object to erroneous jury instructions and listing of responsive verdicts. (2) His appellate counsel was ineffective for failing to address the second prong of the Strickland v. Washington test in arguing ineffective assistance of trial counsel on appeal.

The State filed a response in opposition to Preston's petition, arguing that Preston's claims are without merit.[24]

_____

[21]Id., Louisiana 5th Circuit Court of Appeal Opinion, 2011-KH-0879 (dated 9/21/2011).

[22]Id., Application for Re-hearing (postmarked 10/4/2011); La. 5th Cir. Order (dated 11/2/2011).

[23]Id., La. S. Ct. Writ Application, Case No. 11-KH-2358 (dated 10/24/2011); La. S. Ct. Opinion, Case No. 2011-KH-2358 (dated 6/1/2012).

[24]Rec. Doc. No. 8, pp 20-21.

III.   STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Preston's petition, which is deemed filed in this court under the applicable mailbox rule on February 5, 2013.[26]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and

---

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Preston signed and dated his form Section 2254 petition on February 5, 2013, Record Doc. No. 1 at p. 11, which is the earliest date on which he could have delivered his petition to prison officials for mailing. Preston's petition was actually filed by the clerk of court on February 13, 2013, when his motion to proceed in forma pauperis was granted. Preston's petition was tendered for filing on February 8, 2013. The fact that he did not pay his filing fee and therefore, his pleading was not filed by this court until he had been granted pauper status, does not alter the application of the mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if filing fee did not accompany initial filing) (citing Spotville, 149 F.3d at 374).

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State does not contest and I find that Preston has exhausted his state court remedies.  In addition, the State concedes, and I find, that Preston's petition is timely.[27]

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1); Green v Thaler, 699 F.3d 404, 411 (5th Cir. 2012); Holland v. Anderson, 583 F.3d 267, 272 (5th Cir. 2009).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

---

[27]Record Doc. No. 8 at p. 6 n.5.

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

IV.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Preston argues that his trial counsel provided ineffective assistance in that he failed to object to the trial court's jury instructions concerning "two responsive verdicts not listed in Louisiana law as crimes."[28]  Specifically, he argues that the responsive verdicts "were ranked in such a way that armed robbery became a lesser included offense (or ranked third) to the two judge-created verdicts."[29]  Relying on the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and exhaustively addressing the responsive verdicts and jury instructions issues under both state and federal constitutional law, the Louisiana appellate court found no merit in these claims.[30]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts'

---

[28]Record Doc. No. 1 ("Petition for Writ of Habeas Corpus," Attachment p. 10).

[29]Id.

[30]State v. Preston, 40 So.3d at 1059-63 n.19.

denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland</u>, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove <u>both</u> deficient performance <u>and</u> resulting prejudice.  <u>Strickland</u>, 466 U.S. at 697. The Supreme Court held first that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet <u>either</u> prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

14

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's

actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

The last reasoned decision of the state courts addressing Preston's claim that his trial counsel was ineffective is the detailed and thorough opinion of Judge Fredericka H. Wicker of the state Fifth Circuit court of appeal. <u>State v. Preston</u>, 40 So.3d 1052 (La. App. 5th Cir. 2010); State Record Volume 1 of 5, Louisiana Fifth Circuit Court of Appeal Opinion, 2009-KA-856, May 25, 2010. For the following reasons, I find that the state courts' decision concerning Preston's claim of ineffective assistance of his trial counsel was entirely consistent with and a more than reasonable application of federal constitutional law and Supreme Court precedent.

As an initial matter, I note that the state trial court's jury instructions concerning the substance of the offenses Preston faced at trial were entirely consistent with and faithfully based upon Louisiana statutory law, including but not limited to the definitions of such terms as "armed robbery," "attempt," "firearm" and "dangerous weapon."[31] A person who challenges a jury instruction that closely follows the language of a state statute faces a particularly heavy burden to establish that the allegedly improper instruction "<u>by itself</u> so infected the entire trial that the resulting conviction violates due process." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977) (emphasis added); <u>Waddington</u>

---

[31]State Rec. Vol. 1 of 5, Jury Instructions imaged August 15, 2008.

16

v. Sarausad, 555 U.S. 179, 190 (2009). This heavy burden could not have been borne at

Preston's trial, and it would have been futile for his trial counsel to assert that kind of

objection. See Clark v. Thaler, 673 F.3d 410, 429 (5th Cir. 2012), cert. denied, 133 S. Ct.

179 (2012) ("failure to assert a meritless objection cannot be grounds for a finding of

deficient performance") (quoting Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997);

Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless

objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v.

Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green v. Johnson, 160 F.3d 1029, 1037 (5th

Cir. 1998) (failure to make a frivolous objection is not deficient performance below an

objective level of reasonableness).

     The real thrust of Preston's argument in this court, however, is not the substantive

content of the instructions but their inclusion of an allegedly prejudicial "ranking" of the

specifically charged offense of armed robbery behind two more serious firearms-related

offenses, which Preston argues were non-responsive verdicts, and ahead of other lesser

included offenses. In both the body of the jury instructions and in a one-page attachment

to the jury verdict form, the state trial court listed and ranked the "responsive verdicts"

in descending order of seriousness as follows: "(1) guilty of armed robbery using a

firearm; (2) guilty of attempted armed robbery using a firearm; (3) guilty of armed

robbery; (4) guilty of attempted armed robbery; (5) guilty of first degree robbery; (6)

guilty of attempted first degree robbery; (7) guilty of simple robbery; (8) guilty of attempted simple robbery; and (9) not guilty."[32]

Thus, Preston argues that the state trial court erroneously instructed the jury to consider two non-responsive "judge created" verdicts; i.e., armed robbery using a firearm and attempted armed robbery using a firearm, and then ranked them in such a way that armed robbery, the offense for which he was convicted, "became a lesser included offense (or ranked third)" behind "the two judge-created responsive verdicts."[33]   He speculates that this error somehow precluded a jury that was sympathetic to him at trial from returning an even lesser verdict from among any of the remaining lesser included offenses of armed robbery, such that his trial counsel's failure to object to this error was constitutionally ineffective assistance.

As Judge Wicker's excellent state appellate court opinion explains in detail, although the bill of information expressly charged Preston with use of a firearm in committing the armed robbery, it cited only the armed robbery statute, La. Rev. Stat. § 14:64, and not  the use of a firearm statute, La. Rev. Stat. § 14:63.3. State v. Preston, 40 So.3d at 1059-60. As Judge Wicker accurately explained, however, Section 14:63.3 is "an additional penalty" provision for armed robbery offenses, a sentencing enhancement

---

[32]Id., Jury Instructions and Attachment to Verdict Form dated August 14, 2008.

[33]Record Doc. No. 1 (brief at p. 10).

mechanism that "requires a factual determination on the part of the jury when the finding would increase the sentence beyond the statutory maximum" for an armed robbery conviction, as explained in the decisions of the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Jones v. United States, 526 U.S. 227 (1999). State v. Preston, 40 So.3d at 1060-61. She noted that the leading experts on Louisiana jury instructions have concluded, based on Apprendi and Jones, "that Section 14:64.3 [use of a firearm] is an added element of the offense of armed robbery since it expands the penalty range," and that their treatise proposes precisely the form of responsive verdicts used in Preston's case. State v. Preston, 40 So.3d at 1062 (citing Cheney C. Joseph & P. Raymond Lamonica, 17 Louisiana Civil Law Treatise (2009-10 update) Criminal Jury Instructions § 10.64).

Judge Wicker's state court appellate opinion ultimately found it unnecessary to determine "whether the firearm responsive verdicts were improper" because she concluded at the second prong of the Strickland analysis  that "defendant suffered no prejudice from his counsels' (sic) handling of the responsive verdicts." State v. Preston, 40 So.3d at 1063. However, her reasoning and citations to both the Supreme Court's opinions and the leading treatise concerning the trial court's and Preston's counsel's obvious attempts to comply with Apprendi and Jones in the listing and ranking of responsive verdicts contain the clear implication that defense counsel's performance in

19

failing to object to them was not deficient. For purposes of federal habeas review, it certainly establishes that the state courts' determination of Preston's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of United States Supreme Court precedent.

Even clearer, however, is the state appellate court's correct determination at the second prong of the Strickland analysis  that "defendant suffered no prejudice from his counsels' handling of the responsive verdicts" because "there was no reasonable probability that but for [defense] counsels' alleged unprofessional errors, the result of the proceeding would have been different." State v. Preston, 40 So.3d at 1063. The state appellate court exhaustively assessed the evidence presented at Preston's trial as part of its analysis of Preston's assignment of error that the evidence at trial was insufficient to support the verdict. The appellate court found the evidence more than sufficient to support not just the returned verdict of guilty of armed robbery but also the conclusion that Preston used a firearm in committing it. "The jury could have reasonably inferred that since the defendant left the restaurant about one hour before the robbery, he had time to arm himself with a weapon;" specifically, the "small kind of silver handgun" described in the victim's testimony, and "the jury could have reasonably inferred that the defendant had time to discard the weapon after the robbery." Id. at 1056, 1059. In further support of the lack of prejudice finding at the second step of the Strickland analysis, the state

appellate court accurately concluded: "The jury did <u>not</u> return a verdict of guilty under the firearm statute but returned a verdict of guilty of the <u>less severely punishable</u> crime of armed robbery, thereby eliminating any prejudice of the inclusion of the firearm statute in the jury charges." <u>Id.</u> at 1063 (emphasis added).

It is fully consistent with the federal constitutional standard set out above to find that a court assessing a claim of ineffective assistance of counsel need not find <u>both</u> prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based <u>solely</u> on a petitioner's failure to meet <u>either</u> prong of the test.  <u>Kimler</u>, 167 F.3d at 893.

Preston has not established constitutionally deficient performance or prejudice arising from his trial counsel's actions.  The verdict of guilty of armed robbery was fully supported by sufficient evidence, was independent of and unaffected by any failure to object to the challenged jury instructions and listing of responsive verdicts, and was in fact advantageous to Preston, since the evidence at trial would also have been sufficient to support a finding that he used a firearm to commit armed robbery, which the jury did <u>not</u> select and which carried enhanced sentencing provisions. The state courts' denial of relief was neither contrary to nor an unreasonable application of <u>Strickland</u> or other applicable federal constitutional law precedent.  Preston is not entitled to relief on this claim.

V.      INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (CLAIM NO. 2)

Preston also argues that his appellate counsel was ineffective. Specifically, Preston argues that his appellate counsel "totally abandoned the second prong of Strickland requirements, by failing to demonstrate how petitioner's trial counsel's error . . . deprived[d] him of a fair trial or that there exist[ed] a reasonable probability absent trial counsel's error the result of the proceedings would have been different."[34]

Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right. Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The Strickland standard applies to claims of ineffective appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1998). To prevail on a claim that appellate counsel was constitutionally ineffective, Preston must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith v. Robbins, 528 U.S. at 285-86.

Effective appellate counsel are not required to raise every non-frivolous available ground for appeal.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts, 469 U.S. at 394). On the contrary, the United States Supreme Court has long recognized

---

[34]Record Doc. No. 1-1, Brief at p. 23.

that appellate counsel filing a merits brief need not and should not argue every non-frivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983)  Appellate counsel has the discretion to exclude even a non-frivolous issue if that issue was unlikely to prevail. See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006)("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988)(noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011)(recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).

Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Smith v. Robbins, 528 U.S. 259, 288 (2000); Jones v. Barnes, 463 U.S. 745, 754 (1983).  Under Strickland, Preston must show both that his counsel's performance was unreasonably deficient on appeal and that he was prejudiced. Smith, 528 U.S. at 285.   Preston cannot meet this demanding test.

23

As discussed above, the Louisiana appellate court concluded in its exhaustive opinion that there was ample evidence presented at trial that was wholly "sufficient to prove beyond a reasonable doubt that the defendant robbed the victim while armed with a dangerous weapon."  That weapon was a firearm.  However, "[t]he jury did <u>not</u> return a verdict of guilty under the firearm statute but returned a verdict of guilty of the <u>less severely punishable</u> crime of armed robbery, . . ." 40 So.3d 1063 (emphasis added). Under these circumstances and applying the legal standards set out above, Preston was not prejudiced by his trial counsel's performance, his appellate counsel would have been asserting a weak ground in arguing prejudice, and there was no reasonable probability that the result of the appeal would have been different if appellate counsel had advanced the argument Preston now proposes.

I have reviewed counsel's 17-page appellate brief in detail.[35]  Although Preston is correct that his appellate counsel did not argue the prejudice prong explicitly when he made the <u>Strickland</u> reference and citation in his brief,[36] I conclude that when fairly read in complete context and as a whole the appellate brief reflects more than constitutionally adequate performance. The brief asserts two separately identified assignments of error. In both instances, counsel's arguments were sufficiently compelling to require the state

---

[35] State Rec. Vol. 4 of 5, Original Brief on Behalf of Appellant, La. 5th Cir. Case No. 09-KA-0856, filed Nov. 17, 2009.

[36] <u>Id.</u> at pp. 13-14.

24

appellate court to examine the arguments closely and evaluate them in great detail in its published opinion. In addition, the arguments of appellate counsel throughout the separately enumerated assignments of error were interrelated and interwoven, one relying upon and mentioning the other. For example, as part of the first assignment of error, counsel expressly requested that the court consider the alleged ineffectiveness of Preston's trial counsel in failing to object to the substantive errors concerning jury instructions and responsive verdicts as "so egregious" that it should be considered on direct appeal as an "error patent," even though Louisiana law provides that ineffective assistance of counsel claims are more appropriately asserted in an application for post-conviction relief, rather than on direct appeal.[37] The second assignment of error then made as thorough an argument as possible that the evidence at trial was insufficient to support the armed robbery conviction, ending with the concluding argument "that the error in Assignment No. 1 is so extreme as to not allow" for the rejected lesser responsive verdicts.[38]  Read as whole, the clear intimation of this intertwined argument is that the argued insufficiency of the evidence illustrates the prejudice inherently resulting from trial counsel's alleged ineffective performance. The fact that the court did not accept this argument does not render appellate counsel's performance constitutionally deficient. See

---

[37]Id. at pp. 13-14.

[38]Id. at p. 16.

Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

Preston fails to show how he was prejudiced, as required by Strickland, by any deficiency in his appellate counsel's overall performance or brief on appeal. He does not demonstrate that any different presentation of the claims and arguments that his trial counsel failed to object to the jury instructions or listing of responsive verdicts would have been more favorably received by the appellate court or that there was any probability that a different result favorable to him would have occurred. Preston thus fails to show that the state court's decision denying relief on his claim of ineffective appellate counsel is contrary to or an unreasonable application of Strickland.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of George A. Preston for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

26

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[39]

New Orleans, Louisiana, this __20th__ day of September, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[39]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.